IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHERYL LYNN SPRAGGINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-01906-S-BT |
| | § | |
| CALIBER HOME LOANS, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Caliber Home Loans, Inc. ("Caliber") has filed a Motion to Dismiss this removed civil action arising out foreclosure proceedings initiated in state court. For the following reasons, the District Court should GRANT Caliber's Motion (ECF No. 7) and dismiss Plaintiff's claims with prejudice.

**Background**

This lawsuit is the latest in a series of legal proceedings directed to preventing Caliber from foreclosing on a home in Desoto, Texas (the "Property") once owned by Barbara Randles and her husband Douglas Randles and now occupied by Plaintiff Cheryl Spraggins.[1] *See* Pl.'s Am. Pet. (ECF No. 1-18) at 1, ¶ 2 & 2–3, ¶ 8.

---

[1] The Court draws its factual account from the live pleading, Plaintiff's First Amended Petition, as well as the other materials attached to Caliber's Notice of Removal (ECF No. 1), and the parties' briefing on Caliber's Motion. Any contested facts are identified as the allegation of a particular party.

The Randles purchased the Property on December 12, 2017, with proceeds from a mortgage loan (the "Loan") evidenced by a promissory note executed by Barbara Randles in favor of Caliber. *See id.* at 3, ¶¶ 8–9. Barbara Randles and Douglas Randles executed a Deed of Trust (DOT) granting a security interest in the Property to secure the Note. *Id.*; *see also id.* Ex B. For six months, the Randles made all the required payments due under the Note and the DOT. *See id.* at 3, ¶ 10. But Barbara Randles died in July 2018, and Douglas Randles did not make any Loan payments after she died. *See id.* at ¶¶ 10-11.

Spraggins, who claims to have been a "very close friend of Mrs. Randles," avers that she is the current fee simple owner of the Property and the "confirmed 'successor in interest'" on the Loan. *Id.* at 3, ¶¶ 8, 11. According to Spraggins, Barbara Randles's sister approached Caliber in October 2018 and advised Caliber that Spraggins wanted to acquire the Property to use as her residence and to assume the Loan under a modification. *Id.* at 3–4, ¶ 11. A representative for Caliber allegedly promised Spraggins that if she could resolve certain issues related to the Property's chain of title, Caliber would "agree to allow Plaintiff to assume the loan and would also modify the loan by putting all of the past due delinquency amounts that had accrued onto the back end of the loan and would allow Plaintiff to then resume making the monthly payments." *Id.* at 4, ¶ 12. In reliance on that alleged promise, Spraggins worked with Barbara Randles's sister to get title to the Property in her name. *See id.* at 4-6, ¶¶ 15–21.

In April 2019, Caliber allegedly confirmed to Spraggins that all the title paperwork was "in order" and it would send Spraggins Loan assumption and modification paperwork to execute. *Id.* at 6, ¶ 22. Thus, Spraggins contends, she established herself as the "confirmed successor in interest of the deceased borrower" under the 2016 amendments to the Real Estate Settlement Procedures Act (RESPA). *Id.* ¶ 23. Shortly thereafter, Spraggins submitted Loan assumption and modification paperwork to Caliber. *Id.* at 7, ¶ 24. However, Caliber posted the Property for a foreclosure sale on May 6, 2019. *Id.* ¶ 25.

In an attempt to prevent the foreclosure, Spraggins filed for bankruptcy. *See id.* ¶ 27. The bankruptcy court dismissed her case with prejudice in September 2019. *Id.*

Spraggins subsequently recruited a friend to renew negotiations with Caliber. *Id.* at 7–8, ¶ 28. Caliber did not respond to the friend's entreaties and instead posted the Property for a foreclosure sale on December 3, 2019. *See id.* at 8, ¶ 29.

To prevent the foreclosure this time, Spraggins filed suit in state court on December 2, 2019 and obtained an order enjoining the foreclosure sale. *Id.* In May 2020, Caliber moved for summary judgment on traditional and, because Spraggins failed to respond to Caliber's discovery requests, no-evidence grounds. The state court set the motion for a hearing on July 22, 2020. But on July 15, 2020, Spraggins filed a First Amended Petition, asserting "additional facts and entirely different claims and causes of action," Pl.'s MSJ Resp. 3, ¶ 9 (ECF No. 1-17),

including for the first time, federal claims under RESPA and the Fair Debt Collection Practices Act (FDCPA). Notice Removal 1, ¶ 2 (ECF No. 1).

Caliber timely removed the lawsuit to federal court on July 20, 2020, asserting federal question jurisdiction. *Id.* at 3–4, ¶¶ 7–10. Shortly thereafter, on August 10, 2020, Caliber filed the pending Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Spraggins failed to timely file a response to the Motion. *See* NDTX L. Civ. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed.") However, on October 7, 2020, Spraggins filed a motion for leave to file a late response, which the Court granted in the interest of justice despite finding that counsel's reasons for requesting additional time lacked merit. *See* Order (ECF No. 12). Caliber filed a reply. And on December 15, 2020, the Court held a hearing on the Motion. In addition to counsel, Spraggins appeared at the hearing as ordered by the Court. The issues are now fully-briefed and argued, and the Motion is ripe for determination.

## Legal Standards

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Crear v. JPMorgan Chase Bank, N.A.*, ____ F. Supp. 3d _____, 2020 WL 5848991, at *2 (N.D. Tex. Sept. 30, 2020) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual

matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 6 62, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they

"are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## Analysis

In her Amended Petition, which is the live pleading in this action, Spraggins claims Caliber breached the DOT by failing to provide her with notice and opportunity to cure the Loan default as required under paragraph 22 of the DOT and Section 51.002(d) of the Texas Property Code and by failing to provide her with the right to reinstate the Loan after acceleration in accordance with paragraph 19 of the DOT. Pl.'s Am. Pet. at 12, ¶¶ 41–42. She also claims Caliber violated the Texas Debt Collection Act (TDCA), as well as the FDCPA, RESPA, Regulation X, and the Consumer Financial Protection Bureau's (CFPB) 2018 Amendments, by failing to provide her with information or documentation regarding the Loan after she allegedly provided Caliber notice that she was Barbara Randles's successor in interest, and instead accelerating the Loan and posting the Property for foreclosure. *Id.* at 14, ¶ 47; 16, ¶ 56; 18, ¶ 61.

Caliber moves under Rule 12(b)(6) to dismiss all of Spraggins's claims on the following grounds: (1) Spraggins's FDCPA claim fails because Caliber is not a debt collector under the FDCPA, and the failure to provide information is not an actionable misrepresentation under the FDCPA; (2) Spraggins's RESPA claim fails because she is not a borrower or confirmed successor in interest with standing to bring a claim, and there is no private right of action to enforce 12 C.F.R. § 1024.38;

(3) Spraggins's breach of contract claim fails because she was not a party to the DOT, and she was not required to receive notices or information regarding the Loan because she did not acquire the borrower's rights under the DOT; and (4) Spraggins's TDCA claim fails because she does not point to any affirmative statement by Caliber she believes to be false or misleading, and the failure to provide information is not an actionable misrepresentation under the TDCA. The Court addresses these arguments below.

I.    Spraggins's FDCPA claim should be dismissed.

    a.    Spraggins abandoned her claim under the FDCPA.

Caliber argues that Spraggins abandoned her FDCPA claim by not defending it in her Response to Caliber's Motion to Dismiss. Reply 13–14 (ECF No. 14). Indeed, it is well established in this Circuit that "[w]hen a plaintiff fails to defend a claim in response to a motion to dismiss . . ., the claim is deemed abandoned." *See Arias v. Wells Fargo Bank, N.A.*, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)); *see also Arkansas v. Wilmington Tr. Nat'l Ass'n*, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020).

Here, Spraggins's Response mentions that her complaint "includes a cause of action for violations of the FDCPA," Resp. 10 n.1, but that is the extent of the defense of her claims. She does not rebut or address any of the arguments made by Caliber in its Motion to Dismiss. Her counsel similarly failed to advance any substantive defense of her claims at the December 15 hearing. Accordingly,

Spraggins has abandoned her claims under the FDCPA. *See Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1016 (N.D. Tex. 2013) ("In his response to the motion to dismiss, Henderson does not address Well Fargo's contentions regarding his FCA claim. Wells Fargo therefore contends, and the court agrees, that Henderson has abandoned his FCA claim.")

      b. <u>Caliber is not a "debt collector" liable under the FDCPA.</u>

Even if Spraggins had not abandoned her FDCPA claim, she has failed to state a plausible claim for relief. The purpose of the FDCPA is to protect both debtors and non-debtors from misleading and abusive debt-collection practices. *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007) (citing 15 U.S.C. § 1692(e)). A debt collector that fails to comply with any of its provisions is, therefore, subject to civil liability. *Id.* (citing 15 U.S.C. § 1692k(a)). A debt collector is "any person . . . who regularly collects or attempts to collect . . . debts owed or asserted to be owed or due another." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing 15 U.S.C. § 1692a(6)). This term does not include a "consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Id.* (citing S. Rep. No. 95–382, 95th Cong. 1st Sess. 3, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1698).

Caliber is not a "debt collector" as defined by the FDCPA. Rather, as Spraggins alleges, Caliber is the Original Lender on the Loan and a mortgage servicing company. Pl.'s Am. Pet. at 3, ¶ 9. The Loan was not in default at the time

Caliber began servicing it. Caliber, therefore, does not fall under the auspices of the FDCPA. *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 524 (E.D. La. Nov. 16, 2009) ("If [the defendant mortgage servicing company] took the mortgage for servicing before [the plaintiff] was in default, it is not a debt collector subject to the FDCPA."); *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 456 (E.D. Tex. May 27, 2011) (explaining that the term "debt collector" under the FDCPA "does not include the originator of the loan or one that obtains a loan before it was in default").

c. <u>Even if Caliber was a debt collector, Spraggins fails to state a claim under the FDCPA.</u>

Spraggins alleges that Caliber violated § 1692e of the FDCPA, which prohibits debt collectors from "using false, deceptive or misleading representations or means in the collection of any debt." Pl.'s Am. Pet. at 15–16, ¶ 54 (quoting 15 U.S.C. § 1692e). Specifically, she claims that Caliber made a "false representation of . . . the character, amount, or legal status of any debt." *Id.* at 16, ¶ 54 (quoting 15 U.S.C. § 1692e(2)(A)). However, Spraggins fails to provide well-pleaded factual allegations that Caliber took any action that constitutes a false, deceptive, or misleading representation.

Section 1692e requires an affirmative misrepresentation or act, not inaction. *Alvarado Martinez v. Eltman Law, P.C.*, 444 F. Supp. 3d 748, 754 (N.D. Tex. Mar. 11, 2020); *In re Lopez*, 2015 WL 1207012, at *7 (Bankr. S.D. Tex. Mar. 12, 2015). Spraggins, claims that Caliber violated § 1692e by "failing, neglecting or refusing

to provide [her] with any information whatsoever concerning the debt," instead "proceeding to accelerate the debt and post the subject Property for foreclosure sale." Pl.'s Am. Pet. at 16, ¶ 56. Such an omission is not an affirmative action and Spraggins does not cite to any authority indicating Caliber's inaction constitutes a violation of § 1692e.  Accordingly, Spraggins fails to state a claim under § 1692e. *See Lopez*, 2015 WL 1207012, at \*7 (finding no affirmative representation had taken place where no information was conveyed); *Alvarado Martinez*, 444 F. Supp. 3d 748, 754, 756 (finding the plaintiff failed to state a claim for relief under § 1692e where there was no showing of an affirmative misrepresentation).

Spraggins further alleges that Caliber violated § 1692f, which prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." Pl.'s Am. Pet. at 16, ¶ 55 (quoting 15 U.S.C. § 1692f). The FDCPA does not define "unfair or unconscionable, but § 1692f provides a non-exhaustive list of violative conduct. *Fath v. BAC Home Loans*, 2013 WL 3203092, at \*13 (N.D. Tex. June 25, 2013). "Although a violation of § 1692f is not limited to conduct that falls within [this list], there is a growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but does not violate another provision of the FDCPA." *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 878 (S.D. Tex. Sept. 26, 2011) (quoting *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. Mar. 17, 2010)) (internal quotations omitted).

In other words, if a plaintiff's claim under § 1692f does not fall under one of the proscribed prohibitions, it must allege conduct distinct from that cited as violative of any other FDCPA provision. This is a result of § 1692f's role as a catchall provision, or "backstop," which catches "those unfair practices which somehow manage to slip by §§ 1692d & 1692e." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D. N.Y. Sept. 16, 2013) (quoting *Osborn*, 821 F. Supp. 2d at 878) (internal quotations omitted).

Spraggins does not cite to the list provided by § 1692f, instead claiming that Caliber utilized unfair or unconscionable means by failing to provide her with any information concerning the debt before accelerating the debt and posting the Property for foreclosure. *Id.* at ¶ 56. This is the same conduct that Spraggins alleges violated § 1692e. Accordingly, Spraggins fails to state a claim under § 1692f. *See Nolan v. Acct. Control Tech., Inc.*, 2018 WL 1903147, at *5 (W.D. Tex. Feb. 23, 2018) (finding the plaintiff failed to state a claim under § 1692f because she alleged no other misconduct than that prohibited by § 1692e); *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 666 (N.D. Tex. Nov. 24, 2010) (dismissing the plaintiff's § 1692f claim with prejudice because he failed to "identify any misconduct beyond that which the plaintiff asserts violates other provisions of the FDCPA").

In sum, the District Court should dismiss Spraggins's FDCPA claims because (1) she has abandoned her claims by failing to defend them in response to Caliber's motion to dismiss; (2) Caliber is not a "debt collector" as defined by the FDCPA;

(3) Spraggins does not allege that Caliber made an affirmative representation under § 1692e; and (4) Spraggins's § 1692f claim does not fall under one of the proscribed prohibitions or allege conduct distinct from that cited as violative of any other FDCPA provision.

II. Spraggins fails to state a claim for relief under RESPA.

a. Spraggins's § 1024.41 claim fails because she lacks statutory standing.

Spraggins claims that Caliber violated RESPA §§ 1024.41(f)(2)(i) and 1024.38(b)(1)(vi). Pl.'s Am. Pet. at 14, ¶ 47; Pl.'s Resp. 7, ¶ 18. Section 1024.41 of RESPA outlines loss mitigation procedures for loan servicers. 12 C.F.R. § 1024.41; *Searcy v. Citimortgage, Inc.*, 2015 WL 11120981, at *3 (N.D. Tex. Sept. 16, 2015). It allows a borrower to submit information a servicer requires to evaluate what loss mitigation options are available to the borrower. 12 C.F.R. § 1024.41(b)(1). Once the servicer has received an application, the servicer must promptly review it to determine if the application is "complete"—meaning the application contains all the information needed to make a determination regarding available loss mitigation options—and then notify the borrower of its determination. 12 C.F.R. § 1024.41(b)(1), (2). Upon acknowledgment of receipt of a complete application, the servicer must (1) "[e]valuate the borrower for all loss mitigation options available to the borrower" and (2) provide the borrower written notice of any loss mitigation options the servicer will offer. 12 C.F.R. § 1024.41(b), (c). A servicer that has received "a borrower's complete loss mitigation application . . . cannot foreclose

before notifying the [borrower] of its loss mitigation ineligibility." *Forscht v. Select Portfolio Servicing, Inc.*, 2018 WL 1757610, at *2 (S.D. Tex. Apr. 12, 2018) (citing 12 C.F.R. § 1024.41(f)(2)(i)). Borrowers may bring suit to enforce these provisions pursuant to 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a); *Rentfrow v. JP Morgan Chase Bank, Nat'l Ass'n*, 2020 WL 1893558, at *4 (S.D. Tex. Mar. 25, 2020).

Here, Spraggins claims in her First Amended Petition that Caliber has violated RESPA § 1024.41(f)(2)(i) by failing to provide her "with any information or documentation after having been provided with actual notice that [Spraggins] was the borrower's successor in interest . . . and instead proceeded to accelerate the Loan and post [Spraggins's] homestead property for foreclosure sale." Pl.'s Am. Pet. at 14, ¶ 47 (emphasis removed). According to Spraggins, this violation caused her to sustain actual damages "in the form of her time and toil" in dealing with Caliber, filing for bankruptcy protection "at least" twice, and attorney's fees, costs, and expenses. *Id.* Caliber, however, claims that Spraggins does not have standing to bring such a claim because "civil liability under RESPA is limited to borrowers" and Spraggins is not a "borrower" as defined by RESPA. Mot. Dismiss 4.

In addition to constitutional standing, plaintiffs must satisfy "statutory standing" requirements. *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (citing *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n. 4 (2014)). "The question is whether the statute grants the plaintiff the cause of action that [s]he asserts." *Id.* Thus, "a plaintiff may state a cause of action only when the interests in the litigation 'fall within the zone of interests

protected by the law invoked.' " *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 499 (5th Cir. 2020) (quoting *Bank of Am. Corp.*, 137 S. Ct. at 1303). To apply this "zone-of-interest" test, courts "must 'us[e] traditional tools of statutory interpretation' to determine 'whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.' " *Id.* at 499–500 (citing *Lexmark Int'l, Inc.*, 572 U.S. at 126–27).

The Court starts with the statutory text, interpreting its ordinary meaning at the time Congress enacted RESPA. *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (starting with the statutory text and interpreting its ordinary meaning as understood at the time Congress enacted the relevant statute). As stated, 12 C.F.R. § 1024.41(a) authorizes "[a] borrower [to] enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))." 12 C.F.R. § 1024.41(a). "Thus, by its plain language, a defendant's liability under RESPA is limited to '*borrowers*.' " *Hobbs v. Nationstar Mortg. LLC*, 2018 WL 6305594, at *2 (N.D. Tex. Dec. 3, 2018) (citing 12 U.S.C. § 2605; 12 C.F.R. § 1024.41(a)) (emphasis added).

Courts in this Circuit have followed this plain meaning, holding that RESPA claims are limited to borrowers. *Id.* (citing *Bridges v. Bank of N.Y. Mellon*, 2018 WL 836061, at *7–8 (S.D. Tex. Feb. 12, 2018); *Smith v. JPMorgan Chase Bank, N.A.*, 2016 WL 4974899, at *7 (E.D. Tex. Sept. 19, 2016), *aff'd* by *Smith v. JPMorgan Chase Bank, N.A.*, 2017 WL 4838389 (5th Cir. 2017) (per curiam)). Neither RESPA nor its implementing regulation, Regulation X define the term

"borrower," but "a number of federal courts have held that only individuals who execute the promissory note are "borrowers" with standing to bring a RESPA claim." *Nelson v. Nationstar Mortg. LLC*, 2017 WL 1167230, at *3 (E.D. N.C. Mar. 28, 2017) (citing *Green v. Cent. Mortg. Co.*, 2015 WL 5157479, at, *5 (N.D. Cal. Sept. 2, 2015); *Correa v. BAC Home Loans Serv. LP*, 853 F. Supp.2d 1203, 1207 (M.D. Fla. Apr. 6, 2012); *Mitchell v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 1094671, at *2 (W.D. Mich. Mar. 30, 2012).

The district court in *Hobbs v. Nationstar Mortgage LLC* found that the plaintiff was not a borrower because she did not show that she had signed the Note or was otherwise obligated on the loan. *Hobbs*, 2018 WL 6305594, at *2. In coming to this conclusion, the court gave weight to a copy of the Note attached by defendant loan servicer showing that the plaintiff did not sign the loan. *See id.* While the plaintiff served "as the point of contact" with the servicer for the entirety of the loan, and the servicer had even treated her as a borrower during their conversations, this did not establish that the plaintiff was a borrower or that she was obligated on the loan. *Id.* As a result, the court concluded that the plaintiff failed to establish statutory standing and dismissed her RESPA claims with prejudice. *Id.; see also Dougherty v. US Bank and Tr. Nat'l Ass'n*, 2020 WL 6372973, at *3 (S.D. Tex. Sept. 14, 2020) (finding the plaintiff was not a borrower under RESPA because he did "not produce any evidence to support he was a signatory or a third-party beneficiary to the Note").

Similarly, the Court finds that Spraggins is not a "borrower" under RESPA. She did not sign the Note and has not shown that she is otherwise obligated on the Loan. *See Baggiolini v. Ocwen Fin. Corp.*, 2019 WL 8331423, at *4 (E.D. Tex. Dec. 12, 2019), *adopted by*, 2020 WL 813044 (E.D. Tex. Feb. 19, 2020), appeal dismissed, 2020 WL 5552597 (5th Cir. Aug. 6, 2020) ("[a]n individual who does not sign a promissory note does not qualify as a borrower for purposes of [RESPA]."). Spraggins implicitly recognizes this fact, as she does not defend her RESPA § 1024.41(f)(2)(i) claim in her Response to Caliber's Motion to Dismiss. *See* Pl.'s Resp. Accordingly, Spraggins does not have standing to bring a claim under 12 C.F.R. § 1024.41.

Spraggins also argues in her complaint that she is Barbara Randles's successor in interest and, as such, is entitled by recent RESPA amendments to the same protections provided borrowers. Pl.'s Am. Pet. at 9–10, ¶¶ 34–35. This claim lacks merit because, as set forth below, Spraggins is not Barbara Randles's successor in interest under RESPA. And even if she was Barbara Randles's successor in interest, she would still lack standing because "[n]ot even a successor in interest to a deceased borrower has standing to bring RESPA claims where the successor in interest did not sign a promissory note." *See Lackie v. PHH Mortgage Corp.*, 2018 WL 4409799, at *2 (N.D. Tex. Sept. 17, 2018) (Rutherford, J.). Spraggins did not sign the DOT dated December 2017, so she lacks statutory standing to bring a claim under RESPA.

b. <u>Spraggins fails to state a claim under RESPA § 1024.41 because she has no actual damages.</u>

In the alternative, Spraggins's RESPA § 1024.41(f)(2)(i) claim fails because she lacks actual damages. Spraggins alleges that she "has incurred damages in the form of her time and toil" in dealing with Caliber, "having to file for bankruptcy protect [sic] on at least two (2) occasions," and attorney's fees, courts costs, and expenses in bringing this action. Pl.'s Am. Pet. at 14, ¶ 48. These claims are not sufficient to allege damages under RESPA.

To state a claim for relief under RESPA, a plaintiff must plausibly allege actual damages as a result of the defendant's alleged violations. *Obazee v. The Bank of N.Y. Mellon*, 2015 WL 4602971, at *4 (N.D. Tex. July 31, 2015); *see also Good v. Prof-2013-s13 Legal Title Tr. IV by U.S. Bank Nat'l Ass'n*, 2019 WL 2617948, at *5 (N.D. Tex. May 16, 2019), *adopted by*, 2019 WL 2616955 (N.D. Tex. June 26, 2019) (stating that actual damages are "a necessary component under Regulation X"). It not sufficient to identify costs associated with bringing litigation, otherwise "every RESPA suit would inherently have a claim for damages built in." *Id.* (quoting *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp.2d 1218, 1223 (E.D. Cal. Jan. 19, 2010)). Courts in this Circuit have instead found a lack of actual damages stemming from an alleged violation of RESPA § 1024.41(f)(2) where "no foreclosure sale has occurred and Plaintiff still possesses the property." *Rentfrow v. JP Morgan Chase Bank, N.A.*, 2020 WL 1893558, at *5 (S.D. Tex. Mar. 25, 2020) (citing *Obazee*, 2015 WL 4602971, at *4).

In the present case, Spraggins does not allege that Caliber has completed a foreclosure sale or otherwise dispossessed her of the Property. Her stated damages of "time and toil" in communicating with Caliber, the need to file for bankruptcy protection, and costs associated with bringing this litigation, as stated, do not constitute actual damages under RESPA § 1024.41(f)(2). Accordingly, Spraggins fails to state a claim under RESPA § 1024.41(f)(2). The District Court should grant Caliber's motion dismiss this claim.

c. Spraggins's claim under RESPA § 1024.38(b)(1)(vi) fails because § 1024.38 does not provide a private right of action.

Spraggins also claims that Caliber's "delay tactics violated 12 C.F.R. § 1024.38(b)(1)(vi), because its notice of foreclosure, which was delayed by eight months, unreasonably interfered with [her] ability to apply for loss mitigation options." Pl.'s Resp. 7, ¶ 18 (ECF No. 9); *see also* Pl.'s Am. Pet. at 13, ¶ 44. Caliber does not contest Spraggins's claim but argues that Spraggins lacks standing because § 1024.38 does not provide a private right of action. Def.'s Mot. Dismiss 8–9.

Indeed, district courts in this Circuit have consistently held that, unlike § 1024.41, "RESPA does not create a private right of action to enforce § 1024.38." *See Wilson v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS5*, 2019 WL 5840325, at *13 (N.D. Tex. Nov. 7, 2019) (quoting *Longmire v. Caliber Bank, N.A.*, 2017 WL 4075187, at *3 (N.D. Tex. Aug. 16, 2017) (Horan, J.), *adopted*

*by*, 2017 WL 4022888 (N.D. Tex. Sept. 13, 2017) (Lynn, C.J.)). In explaining this rule, the CFPB stated that it would rely on the " 'supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38' to 'provide robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38.' " *Wilson*, 2019 WL 5840325, at *13 (quoting Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10778 (Feb. 14, 2013)).

Spraggins does not address the lack of a cause of action in either her Amended Petition or in her Response to Caliber's Motion to Dismiss. She merely alleges that Caliber's actions have caused her damage with little more. *See* Pl.'s Resp. 7, ¶ 18 (ECF No. 11); *see also* Pl.'s Am. Pet. at 13, ¶ 44. Accordingly, Spraggins has failed to state a claim under § 1024.38. The District Court should grant Caliber's motion to dismiss this claim.

III.  <u>Spraggins is unable to state a claim against Caliber for breach of contract.</u>

There are four essential elements of a breach of contract claim in Texas: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Robinson et al. v. Wells Fargo Bank N.A.*, 2020 WL 7010043, at *2 (N.D. Tex. Oct. 15, 2020) (Rutherford, J.) (quoting *Valero Marketing & Supply Co. v. Kalama Intern*, 51 S.W.3d 345, 351 (Tex. App.—

Houston [1st Dist.] 2001, no pet.)) (emphases removed). Spraggins claims that Caliber breached the DOT by violating ¶ 22 of the DOT and § 51.002 of the Texas Property Code. Pl.'s Am. Pet. at 12, ¶ 41. Specifically, Spraggins alleges Caliber failed to provide her with a payoff quote, reinstatement quote, account history, payment history, or any notice of default and opportunity to cure notice, and did not provide her at least 30 days from the date of said notice to cure the default. *Id.* The Court, however, finds that Spraggins is unable to state a claim for breach of contract on multiple grounds.

> a. <u>Spraggins lacks standing to bring a breach of contract claim against Caliber.</u>

To have standing to bring a breach of contract action in Texas, "a plaintiff must show either third-party beneficiary status or privity." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 141–42 (Tex. App.—Dallas 2012, no pet.). Privity is evidenced by showing "the plaintiff was assigned a cause of action under a contract to which the defendant was a party." *Id.* A third party, on the other hand, can only enforce the contract if "the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (citing *MCI Telecomms. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). "[I]n the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication." *Id.*; *see also Corpus Christi Bank & Tr. v. Smith,* 525 S.W.2d 501, 503–04

(Tex.1975) ("[W]e must begin with the presumption that parties contract for themselves . . . .").

Texas courts have followed this principle in foreclosure cases, holding that plaintiffs cannot bring suit for breach of contract if they are not a party to the DOT and never assumed the Borrower's interests under the loan agreement. *See Swannie v. Bank of N.Y., Mellon*, 2012 WL 2942242, at *3 (N.D. Tex. July 19, 2012) (citing *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. dism'd) ("considering that [the plaintiff] was not a party to the . . . loan transaction and that he never assumed [the Borrower's] interests under the loan agreement, he is not in contractual privity with Bank of New York concerning that transaction and thus lacks standing to sue Defendants for breach of contract based on a purported modification of that agreement.")); *contra Barraza v. Bank of Am., N.A.*, 2012 WL 12886438, at *4 (W.D. Tex. Aug. 13, 2012) (holding that the plaintiff could bring suit for breach of contract because she was a party to the DOT).

Here, it is undisputed that Spraggins is not a party to the DOT. Her name appears nowhere on the document and it was never amended or modified to include her. *See* Pl.'s Ex. B, Def.'s Ex. C16 39. Spraggins also does not claim that she is a third-party beneficiary to the DOT. Instead, she claims that she is entitled to the contractual rights afforded borrowers under the DOT and Texas Property Code because she is the "successor in interest" to the borrower. Pl.'s Am. Pet. 12, ¶ 41. Spraggins cites language in the DOT as evidence of her status: " 'Successor in Interest of Borrower' means any party that has taken title to the Property, whether

or not that party has assumed Borrower's obligations under the Note and/or this Security instrument." Pl.'s Ex. B, Def.'s Ex. C16 27, ¶ (R).

While the Security Instrument provides this definition of a successor in interest, there does not appear to be any other provision granting such person additional rights. *See DTND Sierra Invs. LLC v. Bank of Am., N.A.*, 871 F. Supp. 2d 567, 578 (W.D. Tex. May 15, 2012) (finding the DOT's definition of a Successor in Interest of Borrower as "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or Security Instrument" did not alone grant the plaintiff the Borrower's rights under the DOT). On the contrary, the DOT further provides that "any Successor in Interest of Borrower *who assumes Borrower's obligations* under this Security Instrument in writing, *and is approved by Lender,* shall obtain all of Borrower's rights and benefits under this Security Instrument. *Id.* at 34, ¶ 13 (emphases added). Spraggins does not allege that she assumed the Borrower's obligations under the DOT or that she was approved by Caliber as the successor in interest. Instead, she alleges the opposite, that Caliber denied her request to be added as a successor in interest. *See* Pl.'s Am. Pet. at 8, ¶ 30.

Spraggins attempts to contradict this fact by arguing that, as a "confirmed successor in interest," the 2016 amendments to the RESPA and the Truth in Lending Act (TILA) allow her to "effectively step[] into the shoes of the deceased borrower." *Id.* at 9–10, ¶¶ 34–36. According to Spraggins, this allows her to bring suit for breach of contract. *Id.* at 9–10, ¶ 34.

RESPA defines a confirmed successor in interest as "a successor in interest *once a servicer has confirmed* the successor in interest's identity and ownership interest in a property that secures a mortgage loan subject to this subpart." 12 C.F.R. § 1024.31. A "successor in interest" is "a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is:

(1)     A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;

(2)     A transfer to a relative resulting from the death of a borrower;

(3)     A transfer where the spouse or children of the borrower become an owner of the property;

(4)     A transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property; or

(5)     A transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property.

*Id.* Spraggins alleges that she is a successor in interest under this framework, therefore, entitling her to the Borrower's contractual rights under the DOT. Pl.'s Am. Pet. at 12, ¶ 41.

However, Spraggins does not allege facts that show she satisfies any of these definitions of a successor in interest. She did not receive her ownership interest

"by devise, descent, or operation of law," but purportedly from a General Warranty deed approximately five months after Barbara Randles died. *See id.* at 5, ¶ 16. She is not a relative or spouse of a Borrower, so she does not qualify as a successor in interest under subsections (2)–(4). And Spraggins purportedly received rights to the property through a General Warranty Deed, not by inter vivos trust. Accordingly, Spraggins is not a successor in interest under Regulation X. *See In re Pugh*, 2019 WL 4180281, at *4 (Bankr. E.D. Wis. Sept. 3, 2019) (finding that the plaintiff was not a successor in interest under Regulation X where he received the property by quitclaim deed from the heir of the borrower).

While Spraggins claims to be a successor in interest under the broad definition set forth in the DOT, the DOT does not afford her any rights as such. Regulation X similarly does not allow Spraggins to "step into the shoes of the Borrower", as she is not a successor in interest under the 2016 amendments. Accordingly, Spraggins lacks standing to bring a breach of contract claim against Caliber.

### b. Spraggins does not allege that she suffered damages as the result of any alleged breach by Caliber.

In Texas, there are no damages recoverable under a breach of contract claim in the context of foreclosure if there is no foreclosure sale and the property owner maintains title and continuous possession of the property. *Robinson et al. v. Wells Fargo Bank N.A.*, 2020 WL 7010043, at *3 (N.D. Tex. Oct. 15, 2020) (Rutherford, J.) *(*citing *Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D.

Tex. Mar. 25, 2011) (holding plaintiff failed to allege damages for breach of contract where no foreclosure occurred, she remained in continuous possession and occupation, and title remained in her name)).

There is no dispute in this case that Caliber never foreclosed on the Property and Spraggins remains in possession of, and currently occupies, the Property. Spraggins asserts in her Amended Petition that Caliber's actions forced her to "file this lawsuit and seek a temporary restraining order *to prevent the loss of her property*." Pl.'s Am. Pet. at 11, ¶ 39 (ECF No. 1-18) (emphasis added). Accordingly, Spraggins is unable to adequately state damages under Texas law, and the District Court should grant Caliber's motion to dismiss her breach of contract claim.

     c.  <u>Spraggins fails to plead sufficient facts to show that Caliber breached any duty under the DOT or Texas Property Code.</u>

Spraggins's breach of contract claims relies on Caliber's failure to provide her with any information regarding the Loan—including notices of default, acceleration, and posting of the Property for foreclosure sale—in violation of ¶ 22 of the DOT and § 51.002(d) of the Texas Property Code. Pl.'s Am. Pet. at 12, ¶ 41. The Court finds, however, that Spraggins is not entitled to receive such notice, so Caliber could not possibly have violated its contractual obligations.

Texas law generally does not require "[n]otice to a property owner who is not a party to a deed of trust." *402 Lone Star Prop., LLC v. Bank of Am., N.A.*, 2014 WL 4058715, at *3 (Tex. App.—Austin Aug. 12, 2014, no pet.). "To become a party to a deed of trust and obtain the rights of a borrower under a deed of trust, such as

the right to notice . . . , a purchaser of real property must take the affirmative steps of requesting *and receiving* written approval from the lender to assume the borrowers obligations under the deed of trust." *Id.* (citing *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W. 3d 561, 564, 571 (Tex. App.—Amarillo 2013, pet. denied)) (emphasis added); *Schlotte v. Option One Mortg. Corp.,* 2012 WL 1951125 (Tex. App.—Beaumont May 31, 2012, pet. denied) (mem. op.)).

As stated, Spraggins is not a party to the DOT or a third-party beneficiary and is not entitled to the rights of the borrower as a successor in interest. Therefore, Caliber did not violate the DOT by failing to provide Spraggins notice or information about the Loan. *See DTND Sierra Investments LLC v. Bank of Am., N.A.*, 871 F. Supp. 2d 567, 578 (W.D. Tex. May 15, 2012) ("There does not appear to be any other provision in the Deed of Trust granting rights to a Successor in Interest of Borrower, and Plaintiff does not allege that it assumed Borrower's obligations under the Deed in writing or was approved by the Lender such that it would have the rights of a Borrower. Accordingly, Plaintiff fails to allege facts tending to show that it was entitled to any notice under the Deed of Trust.").

The Texas Property Code similarly does not entitle Spraggins to notice. Spraggins alleges that Caliber breached the DOT by violating § 51.002(d), which requires mortgage servicers to provide written notice and an opportunity to cure to debtors in default:

> [T]he mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written

> notice by certified mail stating that the debtor in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given . . . .

Tex. Prop. Code § 51.002(d).

Spraggins has not alleged that she is a "debtor in default" on an instrument securing the property as her residence, such that she would be required to be sent notice. Nor has she alleged that "according to the records of the mortgage servicer of the debt, [she] is obligated to pay the debt." *See* Tex. Prop. Code § 51.002(b)(3). Her complaint does not allege that she is a "debtor . . . according to the records of the mortgage servicer of the debt," and Texas law does not require notice of foreclosure to be sent to persons not parties to the deed of trust." *Rodriguez v. Ocwen Loan Servicing., LLC*, 306 Fed. Appx. 854, 856 (5th Cir. 2009) (quoting *Stanley v. CitiFinancial Mortg. Co.,* 121 S.W.3d 811, 817 (Tex. App.—Beaumont 2003, pet. denied)).

It is immaterial that Caliber may have had notice of Spraggins's alleged ownership interest due to her communications with the servicer, as Caliber's "notification duty extends 'to the parties named on the requisite documents as the debtors, and not to other parties, *known or unknown*.' " *Id.* (quoting *Casstevens v. Smith,* 269 S.W.3d 222, 229–30 (Tex. App.–Texarkana 2008, no pet. h.)) (emphasis added). Caliber was therefore under no obligation to provide notice or any information regarding the Loan to Spraggins. *See id.* ("Therefore, regardless of whether Ocwen knew of Rodriguez's interest in the Hanley Property, Texas law

imposed no requirement for Ocwen to provide notice to Rodriguez."). Accordingly, Spraggins is unable to sufficiently allege that Caliber violated a duty under the DOT or Texas Property Code.

Additionally, Spraggins appears to argue in her Response to Caliber's Motion to Dismiss that Caliber's failure to comply with RESPA is a breach of contract. Pl.'s Resp. 9, ¶ 23. The Court finds that this argument fails as well.

The Fifth Circuit has recognized that federal statutes and regulations incorporated into a contract can form the basis of a breach-of-contract claim. *Johnson v. World All. Fin. Corp.*, 2015 WL 12570894, at *5 (W.D. Tex. July 15, 2015), *adopted by*, 2015 WL 12586086 (W.D. Tex. Aug. 26, 2015), aff'd, 830 F.3d 192 (5th Cir. 2016) (quoting *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013)). Here, in the "definitions" section, the DOT defined "RESPA," in relevant part, as "the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024)." Pl.'s Ex. B, Def.'s Ex. C16 27, ¶ (Q). Paragraph 3 of the "uniform covenants" section heavily references RESPA.

Under the terms of the DOT, Borrower was to pay to Lender "escrow items" such as taxes and insurance premiums. *Id*. at 29, ¶ 3. Lender could collect and hold these escrow fund and was required to pay the escrow items "no later than the time specified under RESPA." *Id*. at 29, ¶ 3. If there was a "surplus" in the escrow account, as defined by RESPA, Lender was to "account to Borrower for the excess."

*Id.* at 30, ¶ 3. Lender was also required to "give to Borrower, without charge, an annual accounting of the [escrow] Funds as required by RESPA." *Id.* at 30, ¶ 3.

Viewing these provisions of the DOT in the light most favorable to the plaintiff under the Rule 12(b)(6) standard, the court in *Mitchem v. Mortgage Elec. Registration Serv., Inc.*, interpreting identical language, found that the DOT did not incorporate all of RESPA but did incorporate several provisions:

> • **12 U.S.C. § 2605(g)** ("[T]he servicer shall make payments from the escrow account[] ... in a timely manner as such payments become due."); 24 C.F.R. § 3500.17(k) ("Timely payments.");
>
> • **12 U.S.C. § 2609(c)(2)(A)-(B)** ("[T]he servicer shall submit to the borrower ... a statement clearly itemizing ... the total amount paid into the escrow account, ... the total amount paid out of the escrow account ... for taxes, insurance premiums, and other charges ... [as well as] the balance in the escrow account" "not less than once for each 12–month period ... at the conclusion of the period."); 24 C.F.R. § 3500.17(i) ("Annual escrow account statements.");
>
> • **24 C.F.R. § 3500.17(c)(2)-(3)** ("The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists and must make any adjustments to the account....");
>
> • **12 U.S.C. § 2609(b)** ("[T]he servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account...."); 24 C.F.R. § 3500.17(f)(5) ("Notice of shortage or deficiency in escrow account."); and
>
> • **24 C.F.R. § 3500.17(f)(2)-(3)** ("If the escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower ..."; and if there is "a shortage of less than one month's escrow account payment, then the

> servicer ... [may] ... allow a shortage to exist" or "require the borrower to repay the shortage amount ....").

2013 WL 3870038, at *5–6 (N.D. Tex. July 26, 2013), aff'd sub nom. *Mitchem v. Fed. Nat. Mortg. Ass'n*, 571 Fed. Appx. 298 (5th Cir. 2014). Importantly, the plaintiffs in *Mitchem* asserted that the mortgage servicer breached the DOT by violating each of these RESPA provisions. *See id.* at 6. The Court, therefore, found that the plaintiff had "identified sections of the deed of trust that the Lender *could* breach by violating certain RESPA provisions." *Id.* at 6.

Here, Spraggins does not assert that Caliber violated any of the provisions identified by the court in *Mitchem* as incorporated into the DOT. Instead, she claims that Caliber violated RESPA when it "delay[ed] making a determination on [her] successor in interest status." Pl.'s Resp. 9, ¶ 23. This would be a violation of 12 C.F.R. § 1024.3 or § 1024.41, which are not incorporated into the DOT. *See Mitchem,* 2013 WL 3870038, at *5–6; *see also* 12 C.F.R. § 1024.38(b)(1)(vi) (requiring mortgage servicers to "promptly facilitate communication with any potential or confirmed successors in interest regarding the property" after "receiving notice of the death of a borrower or of any transfer of the property securing a mortgage loan"); 12 C.F.R. § 1024.41(b), (c) (stating that a servicer that has received "a borrower's complete loss mitigation application . . . cannot foreclose before notifying the [borrower] of its loss mitigation ineligibility). Accordingly, Spraggins fails to state a claim for breach of contract based on violations of RESPA.

## IV.    Spraggins fails to state a claim under the TDCA.

Caliber also moves for dismissal of Spraggins's claims under the TDCA, which prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Caliber Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). For the following reasons, the District Court should dismiss these claims.

To prevail on a TDCA claim, a plaintiff must establish (1) the existence of a consumer debt; (2) that the defendant is a debt collector as defined by the TDCA; (3) that the defendant committed a wrongful act in violation of the TDCA; (4) against the plaintiff; and (5) plaintiff suffered injury as a result of the defendant's wrongful act. *Putty v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017) (citations omitted). The Fifth Circuit has held that mortgage "servicers and assignees are debt collectors, and therefore are covered, under the TDCA." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis removed); *see also Starling v. JPMorgan Chase Bank, N.A.*, WL 4494525, at *7 (N.D. Tex. Aug. 22, 2013) ("Because Defendant is attempting to collect on the mortgage note and foreclose on the Property, it is a debt collector under the TDCA.").

Spraggins alleges that Caliber violated various provisions of the TDCA. *See* Pl.'s Am. Pet. at 17–18, ¶¶ 58–62. But Caliber argues that these claims fail because

Spraggins has not alleged sufficient facts to plausibly state actual damages. Def.'s Mot. Dismiss 21, ¶ 52. Indeed, Texas courts have held "that a plaintiff who cannot prove actual damages cannot successfully maintain an action under the [TDCA]." *Naranjo v. Univ. Sur. of Am.*, 679 F. Supp. 2d 787, 801 (S.D. Tex. 2010) (quoting *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30–31 (Tex. App.–Tyler 2000, pet. denied)) (internal quotations omitted); *see also Elston v. Resol. Servs., Inc.*, 950 S.W.2d 180, 185 (Tex. App.—Austin 1997) (affirming summary judgment when plaintiff failed to prove defendant's alleged violations resulted in actual damages).

The Court finds that Spraggins failed to plead any facts indicating she suffered actual damages or provide any evidence of damages in response to Defendant's Motion to Dismiss. Spraggins merely claims, without more, that Caliber's violations of the TDCA "are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court." Pl.'s Am. Pet. at 17, ¶ 59. Courts in this Circuit have held such cursory allegations fail to sufficiently plead damages under the TDCA. *See Douglas v. Wells Fargo Bank, N.A.*, 2020 WL 6588598, at *7 (E.D. Tex. Oct. 21, 2020) (Horan, J.) (finding the plaintiff's allegation of reliance on a false representation serving as the producing cause of actual damages, without more, failed to sufficiently plead damages); *Jobe v. JPMorgan Chase Bank, Nat'l Ass'n*, 2020 WL 5984369, at *6 (N.D. Tex. Sept. 18, 2020) (dismissing plaintiff's TDCA claims where she alleged "only that the TDCA violations caused her 'actual damages' but [did] not give any

specific factual detail, and she [did] not specify how the statutory violations caused these damages"). Accordingly, the District Court should grant Caliber's motion to dismiss Spraggins's TDCA claims.

Spraggins's claims under the TDCA also fail on individual grounds. The Court will briefly consider each alleged violation in turn.

    a. <u>392.301(a)(7)</u>

The TDCA prohibits debt collectors from "threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings." Tex. Fin. Code § 392.301(a)(7). Spraggins incorporates by reference her allegations of Caliber accelerating the Loan and posting the Property for a non-judicial foreclosure sale as evidence that Caliber violated this provision. Pl.'s Am. Pet. at 17, ¶¶ 58–60. The Court disagrees, finding Spraggins is unable to plausibly state a claim under § 3920301(a)(7).

Section 392.301(b)(3) of the TDCA clarifies that subsection (a) does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Gooden v. Wells Fargo Bank, N.A.*, 2019 WL 6829047, at *4 (N.D. Tex. Dec. 13, 2019) (quoting § 392.301(b)(3)) (internal quotations omitted). The Fifth Circuit has, consequently, established that § 392.301(a)(7) "simply does not apply to non-judicial foreclosure." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 477 (5th Cir. 2015). The DOT explicitly provides for acceleration and power of sale upon default by the Borrower. Pl.'s Ex. B, Def.'s Ex. C16 37, ¶ 22.

Accordingly, Spraggins cannot maintain a claim under § 392.301(a)(7) challenging Caliber's acceleration of the Loan and subsequent posting of the Property for a non-judicial foreclosure sale. *See Holt v. Ocwen Loan Servicing, LLC*, 2013 WL 7211759, at *2 (S.D. Tex. Dec. 12, 2013) ("Because Texas allows for the nonjudicial sale of property . . . [the plaintiff] does not have a claim under [§ 392.301(a)(7)] . . . .") (citing Tex. Prop. Code § 51.002).

### b. § 392.301(a)(8)

The TDCA prohibits debt collectors from using "threats, coercion, or attempts to coerce" by means of "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). But Spraggins is not entitled to relief under § 392.301(a)(8) because threatening foreclosure is not prohibited by the TDCA.

It is well established in the Fifth Circuit that "foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage." *Wildly v. Caliber Bank, N.A.*, 2017 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) (citing *Burr v. JPMorgan Chase Bank, N.A.*, 2012 WL 1059043, at *7 (S.D. Tex. March 28, 2012)). The district court in *Clark v. Deutsche Bank National Trust Company* found a bank did not threaten to take an action prohibited by law when threatening to foreclose on plaintiff's property because it had a contractual right to do so given plaintiffs' admitted default. 2015 WL 4093948, at *12 (N.D. Tex. July 7, 2015). And even when the bank lacked legal authority to foreclose on the plaintiff's property in *Wildly v. Caliber Bank*, the

district court still dismissed the § 392.301(a)(8) claim because threats to foreclose on the property were still not an unlawful action. *Wildly*, 2017 WL 5987590, at \*3.

In this case, there is no dispute that the mortgage loan was in default. Spraggins admits that fact in her First Amended Petition. Pl.'s Am. Pet. at 15, ¶ 51 (ECF No. 1-18) ("Caliber . . . was acting in its capacity as 'mortgage servicer' of the Loan *at a time when the Loan was in default*.") (emphasis added). Caliber, as the holder of the Note was, therefore, contractually entitled by the DOT to initiate non-judicial foreclosure on the Property. *See* Pl.'s Ex. B, Def.'s Ex. C16 37, ¶ 22 (ECF No. 1-18) (detailing acceleration and power of sale); *see also Gooden v. Wells Fargo Bank, N.A.*, 2019 WL 6829047, at \*4 (N.D. Tex. Dec. 13, 2019) (quoting *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 477 (5th Cir. 2015) ("[t]he right to a nonjudicial foreclosure . . . is a contractual right memorialized within a deed of trust or contract lien.")) (internal quotations omitted). Thus, Spraggins fails to state a claim under § 392.301(a)(8).

### c. § 392.304(a)(8)

Section 392.304(a) of the TDCA prohibits a debt collector from using "fraudulent, deceptive, or misleading misrepresentation that employs" certain practices. Tex. Fin. Code § 392.304(a). Among those proscribed practices is "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." *Id.* at § 392.304(a)(8). To prevail, plaintiffs must demonstrate the debt collector made a false or misleading statement that "led [them] to think

differently with respect to the character, extent, amount, or status of [their] debt." *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013). Spraggins's § 392.304(a)(8) claim fails because she is unable to establish that Caliber caused her to think differently about the debt.

Spraggins contends Caliber generally violated the TDCA by making an "intentional and/or knowing misrepresentation of the character, amount or extent of the debt to be collected." Pl.'s Am. Pet. at 17, ¶ 59. However, Spraggins offers nothing beyond a summary allegation that Caliber's actions caused her to think she owed a different amount, that she was not in default, or that a mortgage debt did not exist on the property. *See id.* Spraggins, regardless, could not rely on such statements made during the loan modification process because courts in this Circuit have held that "statements regarding loan modifications do not concern the 'character, extent, or amount of a consumer debt' under section 392.304(a)(8)." *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)). And "terrible customer service is not automatically the equivalent of 'deceptive means.'" *Id.*

Accordingly, Spraggins's claim under § 392.304(a)(8) fails and should be dismissed. *See id.* (affirming dismissal of the plaintiff's § 392.304(a)(8) claim because discussions made during the loan modification process did not concern the character, extent, or amount of the debt)*; see also Douglas v. Wells Fargo Bank, N.A.*, 2020 WL 6588598, at *7 (E.D. Tex. Oct. 21, 2020) (dismissing

plaintiff's claim under § 392.304(a)(8) because the plaintiff failed to show "that any purported misrepresentation caused her to believe she did not have a mortgage debt or had not defaulted").

    d. <u>392.304(a)(19)</u>

Section 392.304(a)(19) of the TDCA is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19); *see Brinkley v. PennyMac Loan Servs., LLC*, 2018 WL 6004309, at *9 ("Section 392.304(a)(19) is a catch-all provision that addresses all false representations or deceptive means that a party might employ in collecting a debt."). The Fifth Circuit has established that "[t]o violate the TDCA using a misrepresentation, the debt collector must have made an affirmative statement that was false or misleading." *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 Fed. App'x. 253, 257 (5th Cir. 2013) (quoting *Kruse v. Bank of N.Y. Mellon*, 936 F.Supp.2d 790, 792 (N.D. Tex. April 1, 2013) (Boyle, J.)) (internal quotations omitted).

Again, Spraggins does not identify any false or misleading statement by Caliber in connection with any attempt to collect the mortgage debt or obtain other information about her. Accordingly, her claim under § 392.304(a)(19) fails. *See Robins v. PHH Mortg. Corp.*, 2020 WL 5604042, at *4 (S.D. Tex. Sept. 18, 2020) (finding plaintiff failed to state a claim under § 392.304(a)(19) because she did not identify any affirmative statement made by the defendant to constitute a misrepresentation); *see also Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345,

348 (5th Cir. 2014) (dismissing plaintiff's § 392.304(a)(19) claim because the loan servicer never "affirmatively represented that [the plaintiff] qualified for the loan modification program").

V.    Spraggins is not entitled to exemplary damages.

In her Amended Petition, Spraggins seeks to recover exemplary damages because Caliber's acts, conducts and/or omissions . . . were committed knowingly, willfully, intentionally, and with actual awareness" to enrich itself at Spraggins's expense. Pl.'s Am. Pet. at 18, ¶ 63–64. Spraggins is only entitled to such a remedy if she "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recover of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003(a). Because Spraggins's claims are subject to dismissal under Rule 12(b)(6), she is not entitled to exemplary damages.

VI.   Spraggins is not entitled to attorney's fees.

In Texas, plaintiffs are not entitled to attorney's fees unless they state a viable cause of action. *See Avila v. Mortg. Elec. Reg. Sys., Inc.*, 212 WL 6055298, at *7 ("without a viable cause of action, [plaintiff] is not entitled to recover attorney's fees"); *see also Everhart v. CitiMortgage, Inc.*, 2013 WL 264436, at * 6 ("[plaintiffs] are not entitled to their requested attorney's fees . . . because they have not pled any viable cause of action against Defendant"). Because Spraggins has not plausibly stated a claim for relief, she is not entitled to attorney's fees.

## Leave to Amend

Finally, the District Court should deny Spraggins's leave to further amend her claims. Spraggins is represented by counsel in this action, and it appears she has alleged her best case. Indeed, she amended her petition in state court prior to removal and did not ask for leave to further amend her pleading in response to Caliber's motion to dismiss. Furthermore, granting leave to amend would only result in unnecessary delay. The Loan has been in default since July 2018. Caliber first posted for foreclosure in May 2019. Spraggins has postponed the seemingly inevitable by filing various legal proceedings, including a bankruptcy petition and then a lawsuit in state court. She then failed to participate in discovery and waited until the eve of the summary judgment hearing in state court to file an amended petition that mooted the summary judgment motion. After removal, Spraggins failed to timely respond to Caliber's motion to dismiss and when she finally did respond, she abandoned one of her federal claims. The District Court should find Spraggins has engaged in a pattern of delay that should not be countenanced by giving her another opportunity to state a claim for relief.

## Recommendation

For the reasons stated, the District Court should GRANT Defendant's Motion to Dismiss (ECF No. 7) and DISMISS with prejudice all of Plaintiff's claims and causes of action.

December 31, 2020.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).